IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TERRI E.,**[1] | Case No. 3:18-cv-01382-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

Nancy J. Meserow, Law Office of Nancy J. Meserow, 7540 SW 51st Avenue, Portland, OR 97219. Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, United States Attorney's Office, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Martha A. Boden, Special Assistant United States Attorney, Office of General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**IMMERGUT, District Judge**

Plaintiff, Terri E., seeks review of a final decision of the Commissioner of Social

Security ("Commissioner" or "Defendant") denying her application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act. As expressed in this opinion, this

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Court affirms the Commissioner's decision because the Administrative Law Judge's ("ALJ")
decision was backed by substantial evidence and is free from harmful legal error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper
legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see
also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means
"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.
Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039
(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate
to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the
Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th
Cir. 2005) (quoting *Andrews*, 53 F.3d at 1039–40). Variable interpretations of the evidence are
insignificant if the Commissioner's interpretation is a rational reading of the record, and this
Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of
Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider
the entire record as a whole and may not affirm simply by isolating a specific quantum of
supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc.
Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court,
however, may not affirm the Commissioner on a ground upon which the Commissioner did not
rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff filed an application for SSI on February 21, 2008, alleging disability beginning May 1, 2004 due to multiple sclerosis ("MS"), fibromyalgia, epilepsy, glaucoma, depression, and anxiety. AR 204–05. The alleged onset date was thereafter amended to February 15, 2008. AR 1395–96. After the initial SSI application was denied, a hearing was held on April 29, 2010 in front of an ALJ for the Social Security Administration. AR 57. That ALJ issued a decision denying Plaintiff's application for benefits on May 7, 2010. AR 78. The Appeals Council remanded for a second hearing, held on November 15, 2012, before a different ALJ. AR 45. On December 20, 2012, the second ALJ again denied Plaintiff's application for benefits. AR 18. After the Appeals Council denied review, AR 1, Plaintiff appealed to this Court, and Judge Mosman remanded for further proceedings. *Helms Eddy v. Colvin*, No. 3:14-cv-01418-JE, 2016 WL 7013467 (D. Or. Nov. 28, 2016). Judge Mosman held that the ALJ had committed harmful error in not finding Plaintiff's fibromyalgia as a medically determinable impairment at step two. *Id.* at *2.

The SSA held a third hearing before a different ALJ, Rudy Murgo, on June 8, 2017. *See* AR 1395. On April 12, 2018, ALJ Murgo held a supplemental hearing to ask Plaintiff additional questions about her eyesight. *See* AR 1377–78, 1633. ALJ Murgo denied Plaintiff's application for benefits in a written decision dated April 26, 2018. AR 1366. Plaintiff now seeks review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (summarizing five-step inquiry).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## C.  ALJ Murgo's Decision

At the first step of the disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 21, 2008, the SSI application date. AR 1350.

At step two, the ALJ found that Plaintiff's multiple sclerosis, asthma, mild glaucoma, obesity, fibromyalgia, degenerative disc disease and depression all constituted severe impairments, meaning that they more than minimally affected her ability to perform basic work

activities. *Id.* The ALJ found that the other medical conditions discussed in the medical records or alleged by the Plaintiff were not severe impairments. *Id*. The list of non-severe impairments included diabetes, seizure disorder, erosive esophagitis and sleep apnea. AR 1350–51.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925, 416.926. AR 1351. The ALJ next assessed Plaintiff's RFC as capable of performing modified light work as defined in 20 C.F.R. § 404.967(b). AR 1354. Specifically, the ALJ found that Plaintiff (1) could "lift and/or carry 10 pounds frequently and 20 pounds occasionally," (2) could "sit for 6 hours in an 8-hour workday and stand/walk for 6 hours in an 8-hour workday," (3) should not "climb ropes, ladders or scaffolds," (4) could "frequently balance, stoop, kneel, crouch, crawl or climbs ramps and stairs," (5) should not "be exposed to heights or hazards," (6) should "avoid concentrated exposure to fumes" and "all other environmental limitations are frequent," (7) should be "limited to simple routine work with a SVP 1 or 2 type tasks," and (8) is "required to wear glasses while working." *Id*.

At step four, based on that determination and recommendation of the vocational expert ("VE"), the ALJ found that after Plaintiff's alleged onset date of disability, she was no longer capable of performing past relevant work as a front desk clerk or night auditor. AR 1364.

Finally, at step five, based on the testimony of a VE, the ALJ concluded that Plaintiff could perform jobs as a routing clerk, laundry folder or price marker that exist in significant numbers in the national economy. AR 1365. Thus, the ALJ ruled that Plaintiff is not disabled.

## DISCUSSION

Plaintiff challenges the Commissioner's determination that she is not disabled. She argues that the ALJ erred by (A) failing to find headaches are one of Plaintiff's medically determinable impairments at step two; (B) formulating an RFC that failed to reflect Plaintiff's

limitations from fibromyalgia; (C) improperly rejecting Plaintiff's alleged symptoms and functional limitations; (D) improperly evaluating medical opinion evidence; and (E) improperly rejecting the lay witness testimony of Plaintiff's father, James H., thereby erroneously concluding that she retained the ability to work. These arguments are addressed in turn.

## A.  Evaluation of Headaches as a Medically Determinable Impairment at Step Two

At step two, the ALJ found on remand that Plaintiff had the severe medical impairments of MS, asthma, mild glaucoma, obesity, fibromyalgia, degenerative disc disease, and depression, all of which he determined significantly limited her ability to perform basic work. AR 1350. Although she prevailed at step two, Plaintiff contends that the ALJ erred by failing to find that headaches are one of her medically determinable impairments. ECF 19 at 9–14; ECF 25 at 1–7.

The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Plaintiff has the burden of proving she has a severe impairment at step two of the sequential evaluation process. 20 C.F.R. § 416.912(a). In order to meet this burden, Plaintiff must furnish medical and other evidence that shows she has a severe impairment. *Id*. Social security regulations provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is non-severe "if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a).[2] When the ALJ finds any of a claimant's impairments to be severe, the ALJ continues with the sequential analysis, considering the effect of all the claimant's impairments, whether or not severe. SSR 96-8p, *available at* 1996 WL 374184, at *5. Reversible error occurs only when a

_____

[2] This definition was previously codified at 20 C.F.R. §§ 404.1521(a), 416.921(a), but the definition has not changed. *See* 82 Fed. Reg. 5,844, 5,860 (Jan. 18, 2017).

severe impairment erroneously excluded at step two causes additional functional limitation not accounted for in the RFC assessment. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

In support of her argument, Plaintiff cites to medical notes regarding headaches in the administrative record. *See* ECF 19 at 10–12. She argues that "the ALJ did not find headaches were medically determinable or 'non-severe'. He simply failed to address the treating physicians' diagnoses, at all." ECF 19 at 9. But this absence is readily explained: Plaintiff has not alleged headaches as an impairment before the ALJ. When Plaintiff filed for benefits, she alleged disability due to fibromyalgia, MS, epilepsy and glaucoma; she did not allege disability due to headaches. *See* AR 205. Plaintiff did not mention headaches in her symptom reports. *See* AR 228–45. Most importantly, in two separate hearings held after Judge Mosman remanded Plaintiff's case to the Commissioner, Plaintiff did not raise the issue of headaches. *See* AR 1377–92, 1395–438.[3] Thus, Plaintiff's assertion that her symptom report demonstrated how "headache symptoms interfered with her ability to perform and complete tasks, and required her to rest" is not supported by the administrative record. *See* ECF 19 at 12.

The claimant has the initial burden to provide medical evidence of an impairment at step two. Further, the Ninth Circuit has held that Social Security claimants must raise issues at hearings before the ALJ in order to preserve them on appeal. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *see also Greger v. Barnhart*, 464 F.3d 968, 973–74 (9th Cir. 2006)

---

[3] Plaintiff claims that she previously alleged headaches as a medically determinable impairment. ECF 19 at 6 n.3. To support this claim, she cites to the F&R issued the last time she appealed to the district court. *Id.* (citing AR 1505). The F&R, in turn, cites the district-court briefing of Plaintiff's attorney for Plaintiff's allegation of headaches. *See* AR 1505. But after Plaintiff's case was previously remanded, she did not raise her headaches as an issue before the ALJ. *See* AR 1377–92, 1395–438. Furthermore, Judge Mosman's opinion did not adopt the F&R's discussion of headaches. *Compare* AR 1519–20 (F&R), *with* AR 1481 (opinion of Mosman, J.).

(applying this holding at step two). This rule reflects "the fundamental principle that an agency, its experts, and its administrative law judges are better positioned to weigh conflicting evidence than a reviewing court." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017). Because Plaintiff did not raise the issue of headaches before the ALJ, she has waived her argument in this Court.[4] Furthermore, as Plaintiff has not demonstrated that headaches caused any functional limitations beyond those in the RFC, any error at step two was harmless. *See Burch*, 400 F.3d at 682.

## B. Formulation of Residual Functional Capacity

Plaintiff contends that the ALJ erred in formulating her RFC given her medically determinable impairment of fibromyalgia. *See* ECF 19 at 14–24. Her briefing suggests that in assessing fibromyalgia, SSR 12-2p requires the ALJ to evaluate certain evidence—such as fatigue, dizziness, and concentration difficulties—as "physiological abnormalities" rather than applying the ordinary rules governing symptom testimony. *See* ECF 19 at 15. However, SSR 12-2p does not sweep so broadly. Once the ALJ finds "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged . . . , the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). SSR 12-2p does not displace this process. Although a footnote in the ruling provides that the

---

[4] For this reason, Plaintiff's reliance on *Papenburg v. Commissioner of Social Security* is misplaced. ECF 19 at 13 (citing 68 F. App'x 16 (9th Cir. 2003)). In *Papenburg*, the court remanded the case to the ALJ because his decision did not address evidence of headaches. 68 F. App'x at 17. However, waiver did not apply there because the claimant testified about her headaches at her ALJ hearing. *See id.*

Commissioner must consider "somatic symptoms" like fatigue, dizziness, and concentration difficulties as clinically observable "signs" rather than "symptoms," SSR 12-2p, *available at* 2012 WL 3104869, at \*3 n.9 (citing 20 C.F.R. §§ 404.1528(b), 416.928(b) (2012)),[5] this statement applies only to the assessment of whether a medically determinable impairment exists. *See id.* at \*2–3. It does not apply to the ALJ's later assessment of the claimant's statements about symptoms and functional limitations. *See id.* at \*5 ("How do we evaluate a person's statements about his or her symptoms and functional limitations? We follow the two-step process set forth in our regulations and in SSR 96-7p.").[6]

To the extent Plaintiff argues that *Revels v. Berryhill* compels a different method for evaluating fibromyalgia pursuant to SSR 12-2p, this Court disagrees. In *Revels*, the Ninth Circuit held that it is not a clear and convincing reason to reject symptom testimony that conflicts with "objective findings" when fibromyalgia is an underlying impairment. *See* 874 F.3d 648, 666 (9th Cir. 2017); *but see Roberts v. Berryhill*, 734 F. App'x 489, 490–91 (9th Cir. 2018) (affirming rejection of claimant's fibromyalgia symptoms because they were inconsistent with objective

---

[5] Defendant notes correctly that these sections have since been removed and reserved. ECF 24 at 5 n.2; 82 Fed. Reg. at 5,871, 5,882 (codified at 20 C.F.R. §§ 404.1528(b), 416.928(b) (2017)). However, the observation is immaterial as these definitions were merely codified elsewhere. *See* 20 C.F.R. §§ 404.1502, 416.902 (2019); *see also* 81 Fed. Reg. 62,560, 62,562 (Sept. 9, 2016) ("As part of our effort to better organize our regulations, we propose to move the existing definitions for signs, symptoms, and laboratory findings from current 20 CFR 404.1528 and 416.928 to the definitions section of 20 CFR 404.1502 and 416.902.").

[6] Effective March 28, 2016, the Commissioner superseded SSR 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at \*2. However, the two-step process for evaluating a claimant's statements about her symptoms remains in place. *See Trevizo*, 871 F.3d at 678 n.5.

medical evidence). *Revels* does not otherwise displace the ordinary two-step process for evaluating a claimant's testimony. *See Revels*, 874 F.3d at 655 (citing *Garrison*, 759 F.3d at 1014–15).[7]

## C. Evaluation of Plaintiff's Symptom Allegations and Functional Limitations

There is a two-step process used in the Ninth Circuit for evaluating a claimant's testimony about the severity and effect of the claimant's symptoms. *Vasquez. v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not

---

[7] Plaintiff suggests that on remand, the ALJ failed to comply with the terms of Judge Mosman's remand order. ECF 19 at 14. This Court observes that the revised RFC reflects significant differences from the prior version. For example, the ALJ before remand determined Plaintiff had the RFC to perform medium work, including lifting and carrying up to 50 pounds occasionally and 25 pounds frequently. AR 27. On remand, the ALJ found fibromyalgia to be a severe impairment and reformulated Plaintiff's RFC to perform modified light work, with the ability to lift and carry 10 pounds frequently and 20 pounds occasionally, with restrictions barring climbing ropes, ladders, and scaffolds. AR 1354.

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46). The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. However, the ALJ may not reject testimony "solely because" the claimant's symptom testimony "is not substantiated by objective medical evidence." *Robbins*, 466 F.3d at 883.

In Plaintiff's application for benefits, symptom/function report, and hearing testimony, Plaintiff discussed her pain, fatigue, cognitive symptoms (including confusion, thinking problems, and memory issues), and physical limitations (including issues standing/walking, lifting/carrying, and sitting, as well as weakness and numbness). *See* AR 205 (application), AR 228–45 (symptom/function report), 1423–32 (first hearing following remand), 1379–86 (second hearing following remand).[8] The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms." AR 1357. In applying the second step of the required analysis, however, the ALJ found that "the claimant's statements are not entirely consistent with the medical evidence and other evidence in the

---

[8] Contrary to Plaintiff's briefing, *see* ECF 19 at 12, Plaintiff did not discuss headaches in her application and symptom report, *see* AR 205, 228–45. Furthermore, despite Plaintiff's assertion, Dr. Kapka did not associate headaches with fibromyalgia. *Compare* ECF 19 at 10, *with* AR 391. The record also indicates that Plaintiff's headaches resolved with medication. *See* AR 391 ("Only taking [ibuprofen] for [headaches] which works well for [headaches]".), 1293 ("She has had no further migraines."). Although the ALJ only mentioned headaches in the context of Plaintiff's drinking soda, AR 1350, his path can reasonably be discerned in light of substantial evidence in the record that headaches do not cause functional limitations beyond the RFC. *See* AR 1096 ("Says can't switch to diet because gets migraine headaches."), 2321 ("Currently has a headache which she thinks is from withdrawal from soda and cigarettes.").

record." *Id*. In support of that conclusion, the ALJ cited two primary rationales: Plaintiff's repeated refusal to comply with the recommendations of her physicians and follow through with treatment; and discrepancies between Plaintiff's testimony, her prior statements and other medical evidence.

A claimant's refusal to follow a treatment regimen has been recognized as a clear and convincing reason to question the veracity of symptom allegations. *Burch*, 400 F.3d at 681 (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)). If a claimant has failed to follow prescribed treatment that might improve symptoms, the ALJ may properly find the alleged intensity and persistence of her symptoms inconsistent with the overall evidence. SSR 16-3p, *available at* 2017 WL 5180304, at *9 (Oct. 25, 2017).

In this case, the ALJ repeatedly noted that Plaintiff was "noncompliant" and "disinterested" in managing her health needs. AR 1351, 1353, 1354, 1356, 1357, 1358, 1359. In treating her obesity and asthma, the ALJ found that per her physician, Tanya Kapka, MD, Plaintiff "is not at all motivated to do anything different: gives lots of reasons why she still smokes despite worsening gastritis and esophagitis; still drinks sodas and eats poorly even though she has diabetes" and "refuses adjunctive medications or counseling." AR 1357 (quoting AR 1096). With respect to her diabetes, the ALJ found Plaintiff had canceled her diabetes classes and noted Dr. Kapka's observations that Plaintiff "is not checking sugars as she ran out of test strips 'months ago'; her diet is terrible, and she is still drinking sodas." AR 1350, 1356, 1357. The ALJ found further disinterest in treatment concerning her degenerative disc disease condition as Dr. Kapka stated Plaintiff is "not motivated to increase physical activity or do anything other than take a pill when she is in pain." AR 1358. The ALJ also noted that Plaintiff repeatedly declined mental health counseling or referral to behavioral health to address her

issues. AR 1354, 1359; *see also* AR 2274 (documenting Plaintiff's refusal of a referral for mental health treatment in September 2017). Finally, the ALJ noted that Plaintiff's "failure to engage in physical therapy suggests her pain symptoms may not be as debilitating as alleged." AR 1358.

Plaintiff acknowledges she was not always fully compliant with her physicians' treatment recommendations but contends the ALJ's rationale is not valid because there were other possible reasons for her noncompliance. ECF 19 at 29–30 (citing *Lockwood v. Comm'r Soc. Sec. Admin.,* 397 F. App'x 288, 290 (9th Cir. 2010)). Indeed, without considering explanations or evidence in the record that explains such noncompliance, the ALJ should not draw inferences from a failure to seek treatment or follow a treatment regimen. *See* SSR 16-3p, 2017 WL 5180304, at *9–10.

Regarding Plaintiff's failure to stop smoking, this District has repeatedly held that a plaintiff's continued tobacco use is not a clear and convincing reason to discount her testimony, because nicotine addiction is the most likely reason such behavior persists. *See, e.g.*, *Jones v. Colvin*, No. 3:13-cv-00890-SI, 2014 WL 3579523, at *6 (D. Or. July 18, 2014); *Strutz v. Colvin*, No. 3:14-cv-00807-SI, 2015 WL 4727459, at *7 (D. Or. Aug. 10, 2015). Here, Plaintiff testified that she had attempted "to quit smoking a couple of years ago" but was unsuccessful. AR 50–51. The ALJ did not recognize Plaintiff's explanation for her failure to stop smoking, and therefore, this rationale is not upheld.

Plaintiff further argues that like her tobacco addiction, her dietary choices were also not completely volitional, despite Dr. Kapka's recommendations. ECF 19 at 34. In support, Plaintiff cites a therapy chart note indicating her significant weight gain was a symptom of her depressive disorder. *Id*. (citing AR 571). Plaintiff explains that Dr. Kapka felt professional mental health intervention might be necessary to help with her dietary issues, including weaning herself off

soda, adjusting her diet, and beginning to exercise. AR 1313. Thus, Plaintiff's position finds

some support in the record. Although Dr. Kapka expressed frustration that Plaintiff was not

"motivated" to make productive changes in her diet and apparently refused medication, the

doctor indicated she "strongly encouraged" Plaintiff to see a behavioral health provider to

address her personal health decisions. AR 1096, 1313.

However, the record also provides substantial evidence that over the course of a decade,

Plaintiff repeatedly refused to accept the professional help offered to her. On March 28, 2017, for

example, Dr. Kapka noted that when she recommended Plaintiff seek counseling to improve her

mental health, Plaintiff had "reasons against anything I suggest." AR 2296; *see also* AR 1314

(noting on October 3, 2011 that Plaintiff was "not taking meds, not doing any lifestyle

modification"). It was not unreasonable for the ALJ to find that Plaintiff's failure to treat was

largely because she simply chose not to follow her physicians' medical advice. *See* AR 1353–54.

Accordingly, the ALJ's finding is supported by substantial evidence, and this Court does not

have the discretion to second-guess it. *Batson*, 359 F.3d at 1193 (when evidence is susceptible to

more than one rational interpretation, the reviewing court must uphold the reasonable

interpretation of the ALJ).

Plaintiff further contends that the ALJ erred in rejecting her muscle and joint pain

because she did not engage in physical therapy, as her doctors advised. *See* ECF 19 at 29–30.

Plaintiff asserts that because she was told there is no "cure" for fibromyalgia, she had no reason

to be compliant with physical therapy. *Id.* at 30. Plaintiff's assertion, however, does not

accurately reflect the medical record. When she started a course of physical therapy, Plaintiff

requested medication for pain control (Vicodin) and was counseled by a nurse practitioner that

Plaintiff could expect "at most" 10% – 30% pain relief from opioid medication and that she

would have to live with "a certain degree of pain for the rest of her life as there is no 'cure' or complete resolution." AR 2013, 2021. The nurse practitioner stressed the need for participation in physical therapy, which she believed would be most beneficial. AR 2013. Plaintiff agreed and then began a course of physical therapy. *Id.*

The evidence before the ALJ demonstrates that Plaintiff's engagement in physical therapy was extremely limited and intermittent. AR 1358. Plaintiff's rationale for her noncompliance is at odds with the advice of her physicians, all of whom repeatedly encouraged her to participate in physical therapy. For example, rheumatologist Joseph Lutt, MD, explained to Plaintiff that patients with fibromyalgia should participate in exercise programs daily. AR 545 (February 11, 2008). Neurologist Daniel K. Friedman, MD, referred Plaintiff to physical therapy to work on her balance. AR 821 (December 11, 2008); *see also* AR 2214 (June 3, 2014, for sciatic pain and balance), 2254 (February 8, 2017, for lumbar radiculopathy). Dr. Kapka recommended yoga or core strengthening exercises; she also offered a PT referral, which Plaintiff declined. AR 2138 (February 9, 2016); *see also* AR 2153 ("Really strongly encouraged her to work with PT to improve her function," on September 29, 2016.).

Plaintiff contends that she made several efforts to participate in physical therapy, but that it caused her pain and did not relieve her fibromyalgia symptoms. ECF 19 at 30. However, the ALJ found that Plaintiff was inconsistent and uninterested in actively performing her prescribed physical therapy exercises and always had an excuse for failing to do home exercises. AR 1358. There is substantial evidence to support this finding. *See* AR 2041 (noting Plaintiff's inconsistency with home exercise program on June 6, 2013), 2049 (same on June 27, 2013), 2061 (same on August 16, 2013, adding that it "[a]ppears she is just attending PT to [*sic*] just so she can receive pain medication"), 2069 (noting on March 31, 2017 that Plaintiff "will be

discharged from [PT] if appointment cancellations continue"). Furthermore, when she actually

engaged in it, Plaintiff reported that she felt she was benefitting from physical therapy. *See* AR

821, 2055. When Plaintiff attended physical therapy sessions at the clinic, she was observed to

be able to perform her exercises "without any issues or excessive fatigue." AR 2059. Plaintiff

also reported that working on a stationary bike helped her feel stronger. AR 2054. Plaintiff's

rationale for noncompliance—"lack of benefit from physical therapy, and the increased pain and

fatigues with exercises"—is undermined by her own reports. *See* ECR 19 at 27. Thus, the ALJ

had a clear and convincing reason for finding that Plaintiff's symptoms were not as debilitating

as alleged: her failure to engage actively in physical therapy. *See Burch*, 400 F.3d at 681.[9]

Prior inconsistent statements have also been recognized as a clear and convincing reason

to reject a claimant's symptom testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir.

2014) (citing *Smolen*, 80 F.3d at 1284); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

2008). In addition, where it is not the sole reason to discredit a Plaintiff's symptom allegations,

inconsistency with the objective medical evidence can constitute a clear and convincing

rationale. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002). Here, the ALJ found that the

extent of Plaintiff's allegations relating to fatigue and cognitive symptoms (confusion, thinking

problems, and memory issues) and physical limitations (standing/walking, lifting/carrying,

sitting, weakness, and numbness) were inconsistent with the overall medical record. *See Revels*,

---

[9] Plaintiff faults the ALJ for rejecting her symptoms on the basis of "drug seeking" behaviors.
ECF 19 at 35. However, the ALJ did not reject Plaintiff's testimony because she requested
medication. *See* AR 1358. Rather, the ALJ discounted Plaintiff's statements about the severity of
her pain symptoms because her behavior demonstrated that she had no genuine interest in
actively engaging in the physical therapy treatment which her doctors recommended. *Id.*

874 F.3d at 657 (holding that ALJ must consider the longitudinal record in evaluating fibromyalgia).

There is substantial evidence to support the ALJ's discounting of Plaintiff's testimony regarding cognitive limitations and fatigue. The ALJ cited the record of treatment notes from neurologist Dr. Friedman, who described Plaintiff's concentration[10] and memory as within normal limits on multiple occasions. AR 1356; *e.g.*, AR 729 (March 20, 2008), 730 (April 22, 2008). Regarding fatigue and confusion, the ALJ also cited Dr. Friedman's records. AR 1356. Dr. Friedman regularly described Plaintiff as alert and oriented. *E.g.*, AR 731 (September 5, 2008), 732 (September 15, 2008); *see also* AR 1018 (noting on August 3, 2010 that Plaintiff "has had no further episodes of confusion"), 1026 (same on January 27, 2011).

The ALJ concluded that Plaintiff's fatigue, confusion, and thinking problems, when they occurred, resulted not from Plaintiff's underlying impairments, but rather from situational stress. *See* AR 1353–54, 1356. In support, the ALJ cited a treatment note from April 9, 2010, when Plaintiff evidently explained that her fatigue resulted from "high stress at home." *See* AR 1012. The ALJ also cited a treatment note from August 3, 2010, regarding a contemporaneous episode of confusion. AR 1356. Dr. Friedman noted that this episode also appeared to result from high stress. *See* AR 1018.[11] Plaintiff now provides an alternate explanation: stress resulted from, and worsened, her fibromyalgia. *See* ECF 19 at 15 n.8. But in light of the record, the ALJ reached a

---

[10] The Court notes that the ALJ found that Plaintiff has "moderate difficulties in concentrating" and incorporated this finding in the RFC. *See* AR 1353–54.

[11] The ALJ also noted that Dr. Kapka's records dispute Plaintiff's claims of cognitive deficits. AR 1356. In a treatment note dated February 6, 2013, Dr. Kapka wrote that Plaintiff "had been very stressed out and feels stress is causing her symptoms." AR 1313.

rational conclusion, and it is not this Court's role to distinguish correlation from causation. *See Batson*, 359 F.3d at 1193.

Regarding Plaintiff's physical limitations, the ALJ relied on records from three of Plaintiff's treating physicians in concluding that her limitations were not as extensive as alleged. First, the ALJ cited chart notes of treating physician Dr. Kapka, which do not indicate restrictions on "lifting, carrying, standing, walking, sitting, or range of motion or movement." AR 1356. Second, the ALJ underscored that treating neurologist Dr. Friedman typically found Plaintiff to have normal power, tone and bulk in her extremities. AR 1352, 1358.[12] Third, the ALJ cited a finding of rheumatologist Dr. Lutt, who noted in his March 2008 exam that Plaintiff had "normal strength and gait." AR 543, 1358.

The Ninth Circuit has held that ALJs err when they discredit fibromyalgia symptom testimony on the basis of a claimant's "normal muscle strength, tone, and stability." *Revels*, 874 F.3d at 666. With respect to records from Dr. Kapka and Dr. Friedman, any findings of normal strength, or "normal range of motion" were, therefore, not a valid basis to reject Plaintiff's testimony. *Id.* at 663, 666. With respect to Dr. Lutt's finding, the question is somewhat closer: the Ninth Circuit has also observed that rheumatologists are to be accorded particular deference in cases of fibromyalgia. *See Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004).

But to the extent that the ALJ also erred in finding Plaintiff's symptoms inconsistent with Dr. Lutt's records, this Court finds that these errors were "inconsequential to the ultimate nondisability determination" in light of the ALJ's other, valid reasons for discounting Plaintiff's

---

[12] Dr. Friedman recorded this finding on many occasions. *E.g.*, AR 729 (March 20, 2008), 730 (April 22, 2008), 731 (September 5, 2008), 820 (December 11, 2008), 822 (October 10, 2009), 1012 (April 8, 2010), 1016 (July 7, 2010), 1032 (August 9, 2011), 1287 (September 20, 2012), 1291 (September 27, 2012), 2356 (February 15, 2018), 2379 (March 15, 2018).

testimony.[13] *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008)

(quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)) (affirming an

ALJ's decision even though two of the ALJ's reasons for rejecting symptom testimony were

invalid). For example, the ALJ also cited records from February 2018, when Plaintiff told Dr.

Friedman that she had not had "any new episodes of weakness or numbness" and that her leg

weakness had improved. *See* AR 1352 (citing AR 2353), 1358 (citing AR 2357). Dr. Friedman

noted that Plaintiff expressly denied lower extremity weakness at multiple examinations. AR

1021 (September 28, 2010), 1026 (January 27, 2011), 1291 (September 27, 2012), 1293 (October

29, 2012). Similarly, with regard to her lifting and carrying abilities, Plaintiff testified before the

ALJ that she felt safe and comfortable lifting and carrying the weight of two cats—"about 24

pounds." AR 1429–30; *see also* AR 1354 (incorporating this finding in the RFC). Although

fibromyalgia symptoms may "wax and wane," *Revels*, 874 F.3d at 657, these prior inconsistent

statements span a range of time. They constitute substantial evidence and provide a clear and

convincing reason to discount Plaintiff's testimony regarding her physical limitations. *See*

*Ghanim*, 763 F.3d at 1163.

Plaintiff also contends that the ALJ erred by disregarding evidence that her medication

caused her to suffer limiting side effects of drowsiness, fatigue, sleepiness, dizziness, and lack of

focus. ECF 19 at 27–28.[14] Although Plaintiff's symptom report alleges these medication side

effects, *see* AR 211, 242, and a few medical records describe instances in which Plaintiff

---

[13] These reasons include the ALJ's conclusion regarding Plaintiff's failure to treat, as discussed *supra*.

[14] Although Plaintiff's briefing cites medical records regarding dizziness, ECF 19 at 17, Plaintiff actually denied dizziness in one of the records cited, AR 2223.

complained of side effects while testing different medications, her overall medical record is replete with denials that her medications caused harmful side effects. *Compare* AR 1379–80 (testifying at hearing that all medications, including Paxil and Tecfidera, cause drowsiness), *with, e.g.*, AR 2203 (denying any side effects of Tecfidera on June 18, 2013).[15] Further, when asked about medication side effects at her April 29, 2010 hearing, Plaintiff testified that she took the medications that made her feel fatigue or drowsiness at night and those which kept her awake (Copaxin and Paxil) in the morning. AR 68. The ALJ noted Plaintiff's tolerance of medications and lack of side effects, and properly discounted testimony that was inconsistent with those previous statements. AR 1352, 1359, 1357.

In sum, the ALJ gave clear and convincing reasons for discounting Plaintiff's testimony. He identified what testimony was not credible and what evidence undermined Plaintiff's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). In light of these reasons, any other errors did not "negate the validity of the ALJ's ultimate conclusion" as to Plaintiff's testimony and were thus harmless. *Batson*, 359 F.3d at 1197. Plaintiff's briefing presents an alternate interpretation of the evidence in the record. But "[w]here the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591.

## D. Evaluation of Medical Opinion Evidence

An ALJ must consider, evaluate, and explain the weight he gave the opinions of medical professionals who saw the claimant or reviewed her records in a professional capacity. 42 U.S.C.

---

[15] Plaintiff denied side effects of Tecfidera on numerous occasions. *See* AR 2207 (October 31, 2013), 2221 (August 27, 2014), 2224 (November 14, 2014), 2235 (December 10, 2015), 2243 (October 26, 2016), 2254 (February 8, 2017), 2259 (May 22, 2017), 2357 (February 25, 2018), 2376 (March 15, 2018). Plaintiff also denied side effects of drowsiness, impaired vision, and thinking abilities at the hearing on April 29, 2010. AR 69.

§ 405(b)(1); 20 C.F.R. §§ 416.927(b), (d) & (e); SSR 6-03p, *available at* 2006 WL 2329939.

Plaintiff contends that the ALJ erred in evaluating the opinions of Dr. Kapka, Dr. Vu, Dr.

Anderson, and Dr. LeBray.

The Ninth Circuit distinguishes between the opinions of three types of physicians:

treating physicians, examining physicians, and non-examining physicians. The opinions of

treating physicians are generally accorded greater weight than the opinions of non-treating

physicians. *Lester*, 81 F.3d at 830. A treating physician's report that is not contradicted by the

opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v.*

*Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is

contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate

reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502

(9th Cir. 1983). An ALJ can comply with this mandate by providing a detailed and thorough

summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence,

and making findings. *Tommasetti*, 533 F.3d at 1041. Specific, legitimate reasons for rejecting a

physician's opinion may include its reliance on a claimant's discredited subjective complaints,

inconsistency with the medical records, inconsistency with a claimant's testimony, or

inconsistency with a claimant's activities of daily living. *Id.* at 1040.

### 1. Dr. Kapka

Treating physician Dr. Kapka submitted a letter dated August 20, 2010, which included a

list of diagnoses and her opinion that Plaintiff is "unable to work for most typical job tasks." AR

880. Plaintiff contends that the ALJ erred in rejecting this opinion. ECF 19 at 24. Specifically,

Plaintiff argues that the ALJ erred by rejecting the opinion on the grounds that it was inconsistent

with the objective medical records, that Dr. Kapka did not conclude that Plaintiff is incapable of

all work, that the opinion did not attribute Plaintiff's limitations to the individual impairments, and that Dr. Kapka did not identify specific functional limitations. *Id.*

These arguments ignore the ALJ's primary rationale for according little weight to Dr. Kapka's letter. The ALJ found the opinion "of minimal weight in assessing the issue of disability" because it was a "list of minimally defined problems" coupled with a conclusive statement that the individual is unable to perform most jobs. AR 1361. In her letter, Dr. Kapka did not support her statement with any clinical findings or a narrative explanation of how she arrived at this opinion. *See* AR 880. Her comments were limited to the conclusory statement discussed above, along with a list of medical diagnoses and their codes. *See id.* She did not explain how these conditions resulted in Plaintiff's being unable to work, or identify specific functional limitations arising from her impairments. *See id.*

The Ninth Circuit has observed that a physician's reports should demonstrate how a claimant's symptoms translate into specific functional deficits which preclude certain activities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Moreover, it is well established that an ALJ "need not accept the opinion of *any* physician if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957 (emphasis added); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). In *Thomas*, the Ninth Circuit held that the ALJ did not err in rejecting the opinion of a treating physician who had written a letter that the claimant was unable to work. *See id.* at 957–58. The ALJ reached that decision after contrasting the physician's conclusion with his clinical findings. *See id.* On that basis, the Court of Appeals upheld the ALJ's decision as supported by substantial evidence. *Id.* at 957.

The ALJ in this case rejected a similarly conclusory opinion after reviewing Dr. Kapka's records. As indicated in his decision, the ALJ found that Dr. Kapka's records do not support her conclusion that Plaintiff is unable to work for most jobs. *See* AR 1356–57, 1361. For example, Dr. Kapka noted that Plaintiff was "doing fine with inhalers," that her depression was stable, and that her seizures were under control. AR 1246–47. Furthermore, as discussed above, Dr. Kapka's notes indicate extensive discussion of Plaintiff's noncompliance with her treatment recommendations. That evidence undermined her conclusion that Plaintiff was not able to work. Thus, substantial evidence supported the ALJ's decision to reject Dr. Kapka's opinion from the letter, and this decision was not in error. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216–17 (9th Cir. 2005).

Plaintiff argues in her briefing that in rejecting Dr. Kapka's opinion, the ALJ erred by "effectively requiring 'objective' evidence for a disease"—fibromyalgia—"that eludes such measurement." ECF 19 at 24 (citing *Benecke*, 379 F.3d at 594). But because the letter is so cursory, it is far from clear that Dr. Kapka's opinion was based on fibromyalgia as opposed to another impairment or rationale. *See* AR 880. Indeed, Plaintiff's argument highlights why SSA regulations accord greater weight to well-supported medical opinions, and why the Ninth Circuit has recognized that the ALJ need not accept those that are conclusory. *See Thomas*, 278 F.3d at 957; 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Without any explanation to support a medical opinion, the ALJ cannot resolve conflicts in the medical testimony or translate the claimant's impairments into concrete functional limitations for the RFC. *Cf. Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

Furthermore, Dr. Kapka's letter also differs from medical opinions at issue in other Ninth Circuit cases regarding fibromyalgia. In *Revels*, the claimant submitted a letter from her

rheumatologist, who specifically treated her fibromyalgia during at least twelve appointments in

a two-year span. *See* 874 F.3d at 658. The court held that the ALJ erred by according no weight

to his opinion—detailed findings regarding the claimant's functional limitations accompanied by

"a two-page, single spaced letter" explaining their basis in the medical record. *See id.* at 658,

662–63; *see also Benecke*, 379 F.3d at 594 (holding that the ALJ erred in rejecting three

rheumatologists' opinions based on the ALJ's "[s]heer disbelief" in fibromyalgia). Dr. Kapka's

letter did not provide anywhere near that level of detail or support for the opinion. The ALJ

provided a legally valid reason to reject it. *See Thomas*, 278 F.3d at 957.

### 2. Dr. Vu

Medical expert Minh Vu, MD, testified at Plaintiff's June 2017 hearing before the ALJ.

*See* AR 1396; 1401–19. At the hearing, he expressed his opinion that Plaintiff had the medically

determinable impairments of MS, asthma, glaucoma, obesity, and degenerative disc disease, but

not fibromyalgia. *See* AR 1408–09. The ALJ accorded Dr. Vu's opinion "great weight,"

although he found fibromyalgia to be a severe impairment and modified Dr. Vu's

recommendation for Plaintiff's RFC by including a requirement of wearing glasses. AR 1360.

Plaintiff contends that the ALJ erred by giving great weight to Dr. Vu's opinion, and by

relying on his findings in formulating Plaintiff's RFC. ECF 19 at 20–25. As Plaintiff points out,

the RFC that Dr. Vu recommended did not incorporate the extent of Plaintiff's alleged symptoms

and limitations. *See id.* at 22. However, as discussed above, the ALJ had other, clear and

convincing reasons for rejecting these symptoms and limitations.[16] Thus, it was not error for the ALJ to formulate a RFC—relying on Dr. Vu's opinion—that did not incorporate them.[17]

### 3. Drs. Anderson and LeBray

Plaintiff contends that the ALJ erred in giving "significant weight" to the 2007 medical opinions of state medical experts Dorothy Anderson, PhD, and Peter LeBray, PhD, as they predate the period of alleged disability beginning February 21, 2008. ECF 19 at 25. Medical reports that predate a claimant's disability onset date are relevant evidence to determine whether claimant's condition has worsened. *See Fair*, 885 F.2d at 600; *see also Johnson v. Colvin,* No. 1:14-cv-3048-JPH, 2015 WL 3823002, at *10 (E.D. Wash. June 19, 2015) (where records predating onset date document two years of "complex psychosocial situation," they are probative of the plaintiff's condition during relevant period). Accordingly, the ALJ did not err in adopting Dr. Anderson's and Dr. LeBray's opinions from the year preceding Plaintiff's alleged onset as evidence to determine the progression of Plaintiff's alleged memory, concentration, and attention deficiencies.[18]

---

[16] There is no indication—and Plaintiff does not argue—that the ALJ discounted Plaintiff's symptoms and limitations on the basis of Dr. Vu's opinion.

[17] Without citation, Plaintiff characterizes fibromyalgia as her "primary impairment." ECF 25 at 14. However, the ALJ acknowledged that symptoms of fibromyalgia, like fatigue and weakness, may also be characteristic of Plaintiff's other impairments, such as multiple sclerosis. AR 1355, 1358. Thus, Plaintiff's argument that Dr. Vu necessarily excluded all effects of these symptoms in formulating Plaintiff's RFC is not dispositive. *See* AR 1412 (quoting Dr. Vu as saying, "[Plaintiff] does have a MS problem. No questions about it.").

[18] As noted previously, Dr. Friedman, a treating physician, similarly observed on multiple occasions that Plaintiff's concentration and memory abilities were within normal limits.

### E.  Lay Witness Testimony

In determining whether a claimant is disabled, an ALJ must consider "lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that cannot be rejected without comment, and requires germane reasons, explained individually or in the aggregate. *Id.*; *Molina v. Astrue*, 674 F.3d 1104, 1114–15 (9th Cir. 2012). Here, the ALJ gave "little weight" to the statements provided by Plaintiff's father, James H.,[19] finding them not based on objective medical findings nor consistent with the majority of the medical record. AR 1363. While it is error to reject lay witness testimony because it is unsupported by the medical record, *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009), an ALJ may discount statements that are inconsistent with medical evidence. *See Greger*, 464 F.3d at 972 (upholding ALJ's finding that claimant's girlfriend was not credible because "her statements are inconsistent with [the claimant's] presentation to treating physicians during the period at issue, and with [the claimant's] failure to participate in cardiac rehabilitation."); *see also Bayliss*, 427 F.3d at 1218 (inconsistency with medical evidence is germane reason to discredit lay witness testimony). James H.'s declaration states that Plaintiff uses a grocery cart as a walker when shopping, needs help carrying more than one basket of clothes to the laundry, and "cannot carry more than a bag of groceries from the car into her home." AR 873–74. The ALJ, however, specifically found that Plaintiff's alleged weakness in her upper and lower extremities was inconsistent with her presentation to her treating physician and contrary to her own statements denying weakness. AR 1352; *see Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (in rejecting lay witness testimony, the ALJ need only give arguably germane reasons and need not

---

[19] *See* footnote 1, *supra*.

clearly link his determination to those reasons). Thus, the ALJ provided a germane reason for discounting James H.'s testimony.

Moreover, any error in discounting the lay witness testimony is harmless because James H.'s testimony failed to add any information regarding Plaintiff's alleged pain and limitations beyond what was described by Plaintiff and validly rejected by the ALJ. *See Molina*, 674 F.3d at 1122 (finding any error harmless where lay testimony does "not describe any limitations beyond those [described by a claimant], which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons."). In other words, fully crediting James H.'s testimony would not affect the decision because his statements do not include any additional functional limitations not already considered by the ALJ.[20] *See Deana M. v. Berryhill*, No. 3:17-cv-1068-SI, 2018 WL 3745821, at *9 (D. Or. Aug. 7, 2018).

## CONCLUSION

For all the foregoing reasons, the Commissioner's decision that Plaintiff was not disabled is AFFIRMED.


**IT IS SO ORDERED**.

DATED this 18th day of February, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

[20] Plaintiff contends that James H.'s statement that Plaintiff could carry only one bag of groceries into her home "indicates a more restrictive lifting capacity than that found by the ALJ in this case." ECF 19 at 38. At her third hearing, however, Plaintiff testified that she felt safe and comfortable lifting and carrying the weight of two cats—"about 24 pounds." AR 1429–30. As such, there was substantial evidence for this finding in the RFC, and Plaintiff was not prejudiced by the discounting of James H.'s testimony. *See* AR 1354 (finding Plaintiff can "lift and/or carry 10 pounds frequently and 20 pounds occasionally").